THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTIAN M. ORTIZ,<br><br>Defendant, | Crim. No. 22-433 (ADC-MEL) |

## OPINION AND ORDER

Before the Court is a Report and Recommendation ("R&R") issued by Magistrate Judge Marcos E. López on December 28, 2023, recommending that defendant Christian M. Ortiz's ("defendant") motion to suppress be denied. **ECF No. 40**. Defendant filed objections to the R&R on January 17, 2024. **ECF No. 44**.

For the reasons explained below, the Court **ADOPTS** the R&R's recommendations, **OVERRULES** defendant's objections to the R&R, and **DENIES** defendant's motion to suppress at **ECF No. 19**.

I.  Relevant Factual and Procedural Background

At the time of his arrest on September 26, 2022, defendant was serving a term of supervised release under the supervision of officer George L. Maymí-Meléndez ("USPO

Case 3:22-cr-00433-ADC Document 51 Filed 02/24/25 Page 2 of 14

Crim. No. 22-433 (ADC-MEL) Page 2

Maymí") of the United States Probation Office ("USPO").[1] According to the terms of his supervised release, defendant could not "own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon," nor could he "commit any federal, state, or local crime." *See* **ECF No. 40** at 9 (quoting Crim No. 13-534, ECF No. 4703 at 3; Crim. No. 12-86, ECF No. 66 at 3).

Defendant's arrest stemmed from his alleged involvement in a shooting with an automatic weapon resulting in death that occurred in the early hours of September 26, 2022, in a gas station in Caguas, Puerto Rico. *See* **ECF No. 19** at 1-2. Later that same morning, USPO Maymí received information from a Puerto Rico Police Bureau ("PRPB") agent regarding defendant being a person of interest in the shooting. *Id.*, at 1. Surveillance photos and a recording of the video of the incident were shown to USPO Maymí, who confirmed that the person in the video, seen discharging an automatic weapon and hitting another person in the face with the butt of the weapon, "look[ed] a lot like" defendant. *See* Tr. of Mot. to Suppress Hr'g, 28:7-29:13, **ECF No. 46** at 35:11-38:24. USPO Maymí was also able to identify two vehicles that he knew belonged to defendant and defendant's mother. *Id.*, at 40:1-41:19.

Based on this information, USPO Maymí obtained supervisory approval to activate the special search condition of defendant's supervised release. This condition, in relevant part, reads:

---

[1] Defendant had previously been convicted and sentenced to thirty months imprisonment and three years of supervised release in Crim No. 12-86, and ninety-seven months imprisonment and eight years of supervised release in Crim No. 13-534, the latter sentence running concurrently with the former.

> The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communications or data storage devices or media, to a search conducted by a United States probation officer at a reasonable time and in a reasonable manner, *based upon reasonable suspicion of contraband or evidence of a violation of a condition of release*. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

**ECF No. 40** at 7 (quoting Crim No. 13-534, ECF No. 4703 at 5; Crim. No. 12-86, ECF No. 66 at 4). USPO Maymí also notified the Court in Crim. Nos. 13-534 and 12-86 of defendant's violation of his terms of supervised release and requested an arrest warrant and show cause hearing. The Court promptly approved the request and issued an arrest warrant against defendant.

Defendant was arrested later that day not by the USPO, but by local police officers. *See* Tr. of Mot. to Suppress Hr'g, **ECF No. 46** at 52:4-9. USPO Maymí and his search team travelled to where defendant had been arrested, explained to him why he was being arrested, and informed him that the special search condition of his supervised release was being enforced. *Id.*, at 51:22-53:14. Defendant told USPO Maymí where he could find the keys to his residence and to the two vehicles parked there. *Id.*, at 53:18-54:12. USPO Maymí, in collaboration with other USPO officers, the U.S. Marshals, and a PRPB K-9 Unit, searched defendant's home and the two vehicles. *Id.*, at 54:15-19. The USPO lead the search. *Id.*, at 54:20-55:11. The search of the house resulted in the seizure of "(1) clothes resembling what Defendant was wearing in the video footage: (a) a white Nike t-shirt, (b) blue jeans, [and] (c) white sneakers; (2) cash; (3) a notepad; and (4) sticker labels." **ECF No. 40** at 5; *see also* Tr. of Mot. to Suppress Hr'g, **ECF No. 46** at 55:12-

58:8.[2] The search of the first vehicle, a light gray-colored 2021 Toyota Corolla with a license plate beginning in "JPF", yielded no evidence. **ECF No. 40** at 6; *see also* Tr. of Mot. to Suppress Hr'g, **ECF No. 46** at 83:17-84:14. The search of the second vehicle, a 1999 Toyota Corolla with tinted windows, resulted in the seizure of "(1) one magazine with 17 rounds of ammunition, (2) identification cards of Defendant, (3) cash, (4) one wallet, (5) two bags, and (6) one cell phone." **ECF No. 40** at 6; *see also* Tr. of Mot. to Suppress Hr'g, **ECF No. 46** at 84:15-86:14**.**

On October 5, 2022, a grand jury returned one-count indictment charging defendant with knowingly possessing 17 rounds of .40 caliber ammunition while having been previously convicted of a crime punishable by imprisonment for a term exceeding one year—in other words, for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). **ECF No. 1**. On May 2, 2023, defendant filed a motion to suppress the seized items. **ECF No. 19**. The United States of America ("government") filed a response in opposition on May 23, 2023. **ECF No. 24**. Defendant's motion was then referred to the Magistrate Judge for the setting of a hearing and issuance of a report and recommendation on August 11, 2023. **ECF No. 25**. The hearing was held on November 17, 2023. **ECF Nos. 31** and **37**.

The Magistrate Judge issued his R&R on December 28, 2023. **ECF No. 40**. There, he recommends that the Court deny the motion to suppress in its entirety. The Magistrate Judge concluded that USPO Maymí had reasonable suspicion to believe that defendant was the person

---

[2] The video of reference being the footage of the September 26, 2022 incident that had occurred at the gas station in Caguas, Puerto Rico.

Case 3:22-cr-00433-ADC   Document 51   Filed 02/24/25   Page 5 of 14
Crim. No. 22-433 (ADC-MEL)                                                                    Page 5

in the video, which showed him engaging in conduct that violated his conditions of supervised release. *Id.*, at 7-10. He also rejected defendant's argument that USPO Maymí was acting as a stalking horse for the PRPB in order to bypass the warrant requirement to search his home and possessions, reasoning that the evidence showed that the USPO's investigation was independent from that of the PRPB and driven by different motivations. *Id.*, at 10-11. Finally, the Magistrate Judge concluded that the search itself was reasonable under the Fourth Amendment, notwithstanding the fact that defendant had already been arrested, because of the government's interest in obtaining evidence regarding defendant's rehabilitation and in eliminating the public danger posed by the automatic weapon used in the gas station shooting. *Id.*, at 11-15.

On January 17, 2024, defendant filed his objections to the R&R. **ECF No. 44**. Defendant's sole objection is, essentially, that the Magistrate Judge erred in finding that the search of his home and the vehicles was reasonable because once defendant was placed under arrest, the USPO officers had sufficient time and resources to obtain a warrant before searching his home. Defendant argues that their failure to do so made the search unreasonable under the Fourth Amendment. Defendant also argues that the justification for the search highlighted by the Magistrate Judge—that USPO Maymí needed more information to issue a recommendation on whether defendant violated the terms of his supervised release and should be incarcerated—is insufficient to justify a warrantless search. Having already watched the video of the shooting, defendant argues, USPO Maymí had already made the determination that defendant had

committed murder and possessed an automatic weapon, making any further information unnecessary for his recommendation. Moreover, defendant argues that USPO Maymí offered no testimony during the hearing as to why he thought the weapon would be in one of the vehicles, or why he thought another person could have access to it.

The government did not file a response to defendant's objection.

## II. Standard of Review

United States Magistrate Judges are granted authority to make recommendations on pretrial matters dispositive of a charge or defense, while the ultimate resolution of motions such as motions to suppress evidence remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b); Fed. R. Crim. P. 59(a) and (b)(1). Any party adversely affected by the recommendation issued may file written objections within fourteen days of being served with the report and recommendation. Fed. R. Crim. P. 59(b)(2). A party that files a timely objection is entitled to a *de novo* review of the Magistrate Judge's recommendations. Fed. R. Crim .P. 59(b)(3). Failure to object waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

"The district court need not consider frivolous, conclusive, or general objections." *Rivera–García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, at *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987)). To the extent a party's objections are little more than general or conclusory, without specifying to which issues the party is objecting, or where the objections are repetitive of the arguments already made to the magistrate judge, a *de novo* review may be unwarranted. *Rivera–García*, 2008 WL 3287236, at *1. "Instead, the report

and recommendation is reviewed by the district judge for clear error." *Id.* (citing *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to ... submit[ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.")); *see also Pabón-Mandrell v. United States*, 91 F. Supp. 3d 198, 201 (D.P.R. 2015) (*de novo* review unwarranted where objections are repetitive of the arguments already raised before the magistrate judge).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3); *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo Rodríguez v. Pfizer Pharma., Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The court may accept those parts of the report and recommendation to which the party does not object. *See Hernández–Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114, 125–26 (D.R.I. 2004)). The Court, however, "is not required to make separate findings of fact or issue an opinion setting forth its own reasoning." *United States v. Bach*, 388 F. App'x 2 (1st Cir. 2010) (citing *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998).

Case 3:22-cr-00433-ADC   Document 51   Filed 02/24/25   Page 8 of 14

Crim. No. 22-433 (ADC-MEL)                                                                        Page 8

### III. Discussion

Defendant urges the Court to reject the reasoning adopted by the Magistrate Judge that "the government's interests in seizing evidence related to violations of supervision does not diminish upon the arrest of a supervisee to such an extent that it should prevent a search or seizure of evidence after such an arrest." **ECF No. 44** at 3. As summarized above, defendant's objection boils down to arguing that USPO Maymí had no need to perform the warrantless search once defendant was arrested, as he already had made up his mind on the supervised release violation and had no reason to suspect that the weapon he saw in the video was in the searched vehicles or that someone could have access to it. *Id.* Defendant, however, does not support his objection with citations to the record or to relevant authority.

There is no dispute that defendant enjoyed a diminished expectation of privacy as a supervised releasee. *See* **ECF No. 19** at 7 ("Although diminished, Mr. Ortiz still had an expectation of privacy…"); *see also United States v. Weikert*, 504 F.3d 1, 11 (1st Cir. 2007) ("[I]ndividuals on conditional release have a substantially diminished expectation of privacy…"). Likewise, there is no dispute that defendant's supervised release conditions allow a probation officer to conduct a warrantless search of defendant's house and property upon reasonable suspicion of contraband or of evidence of a violation of a condition of supervised release. **ECF No. 19** at 11 (citing to text of search condition included in the Amended Judgment in Crim No. 13-534). The dispute submitted to the Magistrate Judge was whether USPO Maymí had sufficiently reasonable grounds to suspect that defendant was involved in a violation of the

terms of his supervised release, and to search defendant's home and vehicles. After listening to testimony from USPO Maymí and reviewing the evidence and submissions of the parties, the Magistrate Judge ruled in the affirmative.

In his objection, however, defendant refines his argument to confine his claim of lack of reasonable suspicion to the period of time after defendant's arrest. His focus is on the Magistrate Judge's rejection of the argument that "the search of the residence and vehicles was unreasonable because [defendant] was no longer a threat to public safety or in a position to destroy evidence." **ECF No. 40** at 2. He "specifically contends that the well-recognized rule that warrantless searches should be limited and exceptional should not be cast aside in case… where the government has not provided specific reasons or evidence about" these risks. *Id.*, at 3. In sum, defendant claims that USPO Maymí had no justification to search the house and vehicles without a warrant.

In his R&R, the Magistrate Judge examined and applied the holdings of several out-of-circuit court of appeals decisions that validated warrantless searches of persons on parole, probation, and supervised release—some of them after arrest. In *United States v. Trujillo*, 404 F.3d 1238 (10th Cir. 2005), the Tenth Circuit validated a search of a parolee's home after arrest, and rejected the argument that the parole agreement ceased to be in force when the defendant was taken into custody. 404 F.3d at 1242-44. In *United States v. Jones*, 152 F.3d 680 (7th Cir. 1998), the Seventh Circuit also validated a search of a parolee's home after arrest, rejecting the argument that, upon arrest, the state loses its interest in the rehabilitative aims of the parole

system and in deterring and preventing unlawful conduct by parolees. 152 F.3d at 686-87. In *United States v. Hill*, 967 F.2d 902 (3rd Cir. 1992), the Third Circuit applied a "special needs" exception to validate a search of a parolee's home and business after being arrested, reasoning that the state has a special need to determine the extent of the parole violation in order to make a determination of whether parole should be revoked. 967 F.2d at 910. And, in *United States v. Jackson*, 663 F. App'x 31 (2d Cir. 2016), the Second Circuit, in an unpublished summary order, upheld a USPO warrantless search of the home of an individual on supervised release, pursuant to a warrantless search and seizure condition, based on reasonable suspicion of him having engaged in drug trafficking. 663 F. Appx. 33-34.

Those cases, in turn, examine and apply a trio of decisions of the Supreme Court on warrantless searches and seizures of persons on parole or probation. First, in *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the Supreme Court found that a state's "special needs" that went beyond traditional law enforcement objectives, such as the need to verify a probationer' compliance with the terms of his probation, allow for warrantless searches of a probationer's home based on a "reasonable grounds" criteria. 483 U.S. at 873-80. Second, in *United States v. Knights*, 534 U.S. 112 (2001), the Supreme Court held that a warrantless search of a probationer's apartment was reasonable under the Fourth Amendment's "totality of the circumstances" standard, insofar as the probationer was subject to a search condition and was supported by reasonable suspicion. 534 U.S. at 592-93. Third, and most recently, in *Samson v. California*, 547 U.S. 843 (2006), the

Supreme Court upheld a warrantless search of a parolee where he had agreed to a warrantless (and suspicionless) search and seizure condition as part of his parole. 547 U.S. at 850-57.[3]

The First Circuit has not yet expressed itself as to the validity of post-arrest, warrantless searches of a supervisee's home or property. In *United States v. Weikert*, however, it did hold that the Fourth Amendment's "totality of the circumstances" standard applies to evaluate the reasonableness of warrantless searches of supervised releasees. 504 F.3d at 10-11. The search and seizure at issue there was the collecting of the supervisee's DNA for indexing purposes. The First Circuit balanced the releasee's diminished expectations of privacy against the government's "important interests in monitoring and rehabilitating supervised releasees, solving crimes, and exonerating innocent individuals," and it concluded that the collecting of the releasee's DNA was not unreasonable under the Fourth Amendment. *Id.*, at 15.

Turning to the case at hand, defendant attempts to rebut the Magistrate Judge's conclusion that the searches were justified by the need for USPO Maymí to obtain further evidence of defendant's alleged violations of his supervised release terms. **ECF No. 44** at 3 (referencing **ECF No. 40** at 14). Defendant points to USPO Maymí's testimony, arguing that he had already concluded, based on the viewing of the recording of the gas station video, that

---

[3] In his R&R, the Magistrate Judge also relied to *Latta v. Fitzharris*, 521 U.S. 246 (9th Cir. 1975), a case that predates *Griffin v. Wisconsin*, 483 U.S. 868 (1987) and its progeny. There, the Ninth Circuit held, among other things, that the search of a parolee's home after arrest was reasonable in light of the state's continuing interest in his rehabilitation and the functioning of the parole system. "[The] parole officer's interest in inspecting his place of residence did not terminate upon his arrest; if anything, it intensified. Revocation is not a necessary consequence of a parole violation…. In making their decision regarding disposition, the parole authorities need to know the number and seriousness of all violations, as well as other current information about the parolee's progress." 521 F.2d at 252.

defendant had committed a crime and used a firearm in violation of his supervised release conditions. Defendant also takes issue with the Magistrate Judge's determination that the search was justified by the potential danger that the automatic weapon posed to the public, arguing lack of supporting evidence. **ECF No. 44** at 3; *see also* **ECF No. 40** at 14 ("Before the search, USPO Maymí had reason to believe that Defendant, at a minimum, was in possession of an automatic weapon, a weapon which was still dangerous even after Defendant was in custody.").

As mentioned previously, defendant does not provide any citation (to the record or otherwise) for his arguments. Regardless, a longstanding rule of Fourth Amendment's reasonableness analysis is that the search is generally evaluated based on the objective circumstances surrounding the search, not on the officer's subjective intentions. *See Kentucky v. King*, 563 U.S. 452, 464 (2011); *Knights*, 534 U.S. at 122; *United States v. Guerrero*, 19 F.4th 547, 549-50 (1st Cir. 2021). Independent of USPO Maymí's intentions, the Court's *de novo* review of the parties' submissions, the suppression hearing transcript, the R&R, and the case law referenced above leads it to conclude that under the totality of the circumstances, USPO Maymí's search and seizure was reasonable.

Defendant was indisputably subject to a search and seizure condition included in his terms of supervised release. This condition could be activated upon "reasonable suspicion" of contraband or evidence of a violation of a condition of release. Two of those conditions were that defendant could not own, possess, or have access to a firearm or ammunition, and that he could not commit any crime.

Case 3:22-cr-00433-ADC Document 51 Filed 02/24/25 Page 13 of 14

Crim. No. 22-433 (ADC-MEL) Page 13

The concept of reasonable suspicion "is somewhat abstract." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *United States v. Cortez*, 449 U.S. 411, 417 (1981). "The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Knights*, 534 U.S. at 592. "Reasonable suspicion requires more than a naked hunch… but less than probable cause." *United States v. Arnott*, 758 F.3d 40, 44 (1st Cir. 2014) (citing *United States v. Sokolow,* 490 U.S. 1, 7, (1989); *United Sates v. Chhien,* 266 F.3d 1, 6 (1st Cir. 2001)).

USPO Maymí developed a reasonable suspicion that defendant had violated those two conditions referenced above when he saw video from the gas station, from which he recognized defendant as the one carrying and discharging a firearm, as well as hitting another individual in the face with it. This allowed him to proceed to search defendant's property for contraband or evidence of this or any other violation of his terms of supervised release, which he did after meeting defendant at the site of his arrest and informing him of his intentions. That defendant had already been arrested is of little consequence. The arrest not only provided for the safety of defendant and USPO Maymí but was also based on reasonable suspicion that defendant could be in illegal possession of a weapon or engaged in a violation of his terms of supervised release. Accordingly, and as per his conditions of supervision, defendant's property—*i.e.*, his residence and vehicles—were subject to warrantless search. As to the latter, this was particularly reasonable given that USPO Maymí was able to recognize the vehicles in the gas station video

with those that he knew defendant had access to. *See* Tr. of Mot. to Suppress Hr'g, **ECF No. 46** at 40:1-41:19. Finally, the argument that defendant did not pose a danger to the public or a risk of destroying evidence at the moment of the search is unavailing insofar as the recording of the gas station video showed that defendant was accompanied by another unidentified individual who could have access to the weapon and the evidence. Therefore, the same rationale behind *Trujillo*, *Jones*, *Hill*, and *Jackson* is applicable here and the USPO's interest in searching defendant's property did not terminate upon his arrest.

All in all, because defendant's expectation of privacy is considerably diminished due to of his supervised release conditions, and because the government's interest in supervising him did not disappear upon his arrest, the totality of the circumstances point to USPO Maymí's search being reasonable and legal under the Fourth Amendment. Accordingly, the Court has no qualms accepting the Magistrate Judge's recommendation that the motion to suppress be denied.

**IV.   Conclusion**

For the foregoing reasons, the Court **ADOPTS** the R&R, **OVERRULES** defendant's objections, and **DENIES** defendant's motion to suppress at **ECF No. 19**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 24th day of February, 2025.

                                              S/AIDA M. DELGADO-COLÓN
                                              **United States District Judge**