`

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | Criminal No. 22-433 (ADC) |
| v. | |
| CHRISTIAN M. ORTIZ, | |
| Defendant. | |

**UNITED STATES OF AMERICA'S**
**SENTENCING MEMORANDUM**

## I.  INTRODUCTION

The United States of America, through its undersigned counsel, respectfully submits this sentencing memorandum seeking **an upward variant sentence of imprisonment of 120 months**, along with a supervised release term of *three years*.

This sentencing memorandum is intended to fulfill the United States' obligation, under which it must provide all relevant information to a sentencing court to enable it to impose a just sentence. *United States v. Brown*, 31 F.4th 39, 50-51 (1st Cir. April 14, 2022). By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

1

`

## II.    GUIDELINE CALCULATION

According to the PSR, Defendant's base offense level is 20. Because Defendant exercised his right to trial, he did not accept responsibility for the offense. After factoring in Defendant's Criminal History Category of IV, Defendant's guideline sentencing range is 63-78 months.

## III.    FACTUAL BACKGROUND

A federal jury found the Defendant guilty as to the sole count of the Indictment, which charges him with the knowing possession of ammunition by a prohibited person (felon) in violation of 18 U.S.C. § 922(g)(1). The following are the facts of the case.

On September 26, 2022, Puerto Rico Police Bureau agents recovered surveillance footage from a gas station where Defendant, Christian M. Ortiz, using what appears to be a pistol modified to operate as a machinegun, shot and killed a male individual and, just seconds later, pistol-whipped a female.



`

 

In this page, the first image at the top, from left to right, has a red circle highlighting what appears to be a burst of projectiles being expelled from a firearm.[1] The shell casings recovered from the scene were .40 caliber.

On September 26, 2022, U.S. Probation Officer George Maymi, the defendant's supervising officer, received reliable information that the defendant, Christian M. Ortíz, was in possession of a loaded firearm and had been involved in the shooting incident that resulted in a murder. After reviewing the video described above and identifying defendant as the shooter, USPO Maymi notified his supervisor, management and the search team, who decided to activate the exigent search condition for Defendant's residence and

---

[1] During the suppression hearing held on February 15, 2024, before the Hon. Marcos E. López, USMS, USPO George Maymi testified that according to what he perceived from the surveillance video recovered from the gas station, the firearm used by defendant was a machinegun: "In this case, when I saw Mr. Ortiz point the gun, fire, there were multiple projectiles exiting very fast the weapon. So in my experience, that is indicative of the weapon being altered and firing automatically in some way." (ECF No. 46 at 38).

`

vehicles, included as part of the defendant's supervised release conditions, as there was reasonable suspicion the defendant was violating his conditions of supervised release. On the morning of September 26, 2022, PRPD detained the defendant at Road 181 in San Lorenzo, PR, about five minutes to where he was residing.

During the search of the residence the search team found and seized approximately $8,000 of US currency that USPO Maymi described as unreported assets, a notepad ledger and stickers for labeling. Due to Defendant's lack of verifiable employment, the cash seized was considered potentially indicative of criminal activity. And, as this Honorable Court knows, drug trafficking organizations often use stickers, such as the one seized, to identify controlled substances.

  

During the search of the residence, the search team found and seized clothing that matched what Defendant had been wearing during the murder as seen on the surveillance videos of the gas station. Specifically: a white Nike t-shirt, blue jeans, and white sneakers. The shirt had a stain that appeared to be blood.

4

`

  

Parked in the residence's garage was the 2021 Toyota Corolla (JPF 442), that defendant had recently purchased and that was known to Probation Officer Maymi.



During the search of the defendant's other vehicle (registered to his mother but used by him), a 1999 Toyota Corolla (DIL 870), which was parked right in front of Defendant's residence, the search team found and seized on the floor a black Coach bag with approximately $3,000, a wallet with defendant's Puerto Rico issued identification card with his picture and demographic information, Defendant's health insurance card, and Defendant's ATM card. Next to the Coach bag a 22-round extended capacity pistol magazine loaded with 17 rounds of ammunition .40 caliber ammunition was also found, the same caliber of ammunition found on the crime scene.

`






## IV.    DEFENDANT'S BACKGROUND

Defendant is 38 years of age and has been a lifelong resident of Caguas, PR, residing with his mother, grandmother and siblings at San Salvador Ward, Sector Anon in Caguas, PR.[2] As to his upbringing, the defendant was raised by his mother and grandmother and did not meet his father.[3] Nonetheless, the defendant reported he was instilled good values in church, and did not report incidents of domestic violence, abuse or negligence in his

---

[2] PSR at ¶ 14.
[3] *Id*. at 13.

`

home.[4] He comes from a low-income household, but his basic needs were meet and reported that no one in his family suffers from mental health conditions or alcohol/drug dependency.[5] He is the first in his family to interface with the criminal justice system and reported having full support from his mother, siblings and children.[6]

Despite the latter, Defendant has had an extensive history of arrest and convictions, all relating to the illegal possession of firearms, controlled substances and drug trafficking.[7] Criminal Case 22-433 would be Defendant's 4th felony conviction. Defendant's previous convictions are summarized as follows:

- On 2011 Defendant was convicted at the state level for the illegal possession of marijuana and cocaine as well as for contempt of court;

- On 2012 Defendant was convicted at the federal level for the first time for the unlawful transport of a firearm; and

- On 2016 Defendant was convicted at the federal level for the second time for a drug trafficking conspiracy to distribute cocaine and for the possession of a firearm in furtherance of drug trafficking.

Defendant has been also arrested for the use of a firearm without license under Article 5.04 of the Puerto Rico Weapons Law (2011); for possession of ammunition and controlled substances (2011); for violations of the Puerto Rico Vehicles and Transit law

---

[4] *Id*. at 14.
[5] *Id*.
[6] *Id*.
[7] *Id*. at 8-13.

7

`

and for possession of controlled substances and the illegal possession of firearms and ammunition (2020).

Defendant has a pending state murder trial for the shooting incident from September 26, 2022.

## V.    SOCIAL CONTEXT

The nature and circumstances of the offense, and the potential for violent crime, should be viewed in light of the social context in Puerto Rico. The First Circuit has recognized the value of community-based factors in fixing a sentence. *See*, *e.g.*, *United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence."). In imposing its sentence, this Court may take into consideration the problem of gun violence in Puerto Rico. *See, e.g., United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019). The First Circuit has acknowledged the seriousness of gun-related violence in this District. *See United States v. Narvaez-Soto*, 773 F.3d 282, 286 (1st Cir. 2014) (describing "the [district] court's reasoned determination, predicated on its experience, that the incidence of violent crime—and, particularly, gun-related violent crime—is an acute problem in Puerto Rico"). Indeed, there is no doubt that "Puerto Rico is a hot spot for weapons." *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019).

`

Firearm violence in Puerto Rico is a grave problem. Puerto Rico has faced—and continues to face—a tidal wave of armed violent crime. In 2017, Puerto Rico had 20.3 murders per 100,000; in 2018, it was 20 murders per 100,000; in 2019, it was 19 murders per 100,000. Comparatively, the United States averaged 5.0 murders per 100,000—put another way, in 2018 and 2019, the United States as a nation averaged 25% of Puerto Rico's murder rate.[8] Murder rates are inextricably linked to gun violence in Puerto Rico because the majority of murders are committed with firearms. In 2018 and 2019, for example, Puerto Rico (and Puerto Rican men in particular) had the highest proportion of firearm related homicides than any other state or territory:




_____

[8] FBI, Uniform Crime Report, *2019 Crime in the United States*, available at: https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/tables/table-1 (last visited December 19, 2021).

`

Since the population of Puerto Rico faced prolonged quarantine for much of 2020, Puerto Rico's murder rate was the *lowest* in 31 years (529 homicides).[9] Despite 2020 being an aberration in an otherwise violent past, it was still a bad year by almost any metric. Puerto Rico's murder rate in 2020 was 16.7 murders per 100,000 people, which is more than 2.5x the national average and well above the murder rate for cities with more than 250,000 people. For example, in the First Circuit in 2020, Maine had 1.6 murders per 100,000 people; Massachusetts had 2.3 murders per 100,000 people; New Hampshire had .9 murders per 100,000 people; and Rhode Island had 3 murders per 100,000 people. And that's Puerto Rico's murder rate while under prolonged quarantine because of a once-in-a-generation pandemic.

As quarantine and related restrictions eased in 2021, the murder rate similarly increased. BPRP statistics show 529 homicides committed in 2020, with 616 homicides having been committed in 2021—an almost 20% increase.[10] Puerto Rico averaged 51 murders each month. On three separate occasions in 2021, Puerto Rico had 60 or more murders in one month. To put that into context, 10 states had less than 60 homicides in all of 2020.[11] By the end of 2021, Puerto Rico amassed 616 murders, which is 19.3 murders

---

[9]  El Nuevo Dia, *Puerto Rico cierra el 2020 con la cantidad más baja de asesinatos en 31 años*, available at: https://www.elnuevodia.com/noticias/seguridad/notas/puerto-rico-cierra-el-2020-con-la-cantidad-mas-baja-de-asesinatos-en-31-anos/ (last visited December 19, 2023).

[10]  Estadisticas.PR, Most Recent Statistics, https://estadisticas.pr/en/estadisticas-mas-recientes?type=delitos_tipo_i (last visited March 30, 2022).

[11]Center for Disease Control, *Homicide Mortality by State*, available at: https://www.cdc.gov/nchs/pressroom/sosmap/homicide_mortality/homicide.htm (last visited October 8, 2021).

`

per 100,000 people – a number that remains concerningly high compared to almost any other developed country.[12]

It was also an aberration in that the United States had the largest relative *increase* in gun violence since national data collection began in 1960.[13] Even then, Puerto Rico had a higher percentage of gun-caused murders than the national average; even during one of the bloodiest years in the nation's recent history. While guns were used in 77% of murders nation-wide, they were used in 90% of murders in Puerto Rico according to PRPB statistics, a percentage that is double the world's average for the use of weapons in homicides (41.2%).[14]

Relatedly, the prevalence of gun violence in Puerto Rico is even more distressing when the data is viewed through a broader lens: "Among 64 high-income countries and territories, the United States stands out for its high levels of gun violence. The US ranks eighth out of 64 for homicides by firearm (age-adjusted). Puerto Rico and the US Virgin Islands, rank first and third on that list."[15]

The circumstances of the offense, when viewed through the violent social context in Puerto Rico, counsel for a sentence of imprisonment of 120 months.

---

[12] Statista, *Homicide Rate in Puerto Rico from 2014 to 2021*, available at: https://www.statista.com/statistics/984823/homicide-rate-puerto-rico/#:~:text=In%202021%2C%20Puerto%20Rico%20recorded,the%20largest%20improvement%20since%202015. (last visited March 16, 2022).

[13] IHME, *On gun violence, the United States is an outlier*, available at: http://www.healthdata.org/acting-data/gun-violence-united-states-outlier (last visited October 8, 2021).

[14] Politics Today, *Gun Violence in the US and Puerto Rico: This Can No Longer Continue!*, available at: https://politicstoday.org/gun-violence-in-the-us-and-puerto-rico-this-can-no-longer-continue/ (last visited October 8, 2021).

[15] Institute for Health Metrics and Evaluation, *On gun violence, the United States is an outlier*, available at: http://www.healthdata.org/acting-data/gun-violence-united-states-outlier (last visited October 8, 2021).

`

## VI. NEED FOR ADEQUATE DETERRENCE

"[T]he incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence". *United States v. Viloria-Sepulveda*, 921 F.3d 5, 10 (1st Cir. 2019) (quoting *United States v. Flores-Machicote*, 706 F.3d 16 (1st Cir. 2013). Higher sentences for gun-related offenses have a deterrence effect. *See United States v. Martinez,* 184 F. Supp. 3d 1209, 1238 (D.N.M.), *aff'd,* 660 F. App'x 659 (10th Cir. 2016) ("[R]esearch strongly indicates that increases in sentence length have at least some general deterrent effect—especially for criminals facing shorter sentences."); David S. Abrams, *Estimating the Deterrent Effect of Incarceration Using Sentencing Enhancements*, 4 Am. Econ. J.: Applied Econ. 32 (2012) (empirical study finding that increased sentences for gun-related offenses decrease certain gun violence).

Puerto Rico's acute problem with firearms and violence, and the nature of the crime, justify a sentence of imprisonment of 120 months to deter Defendant and others from committing similar offenses.

## VII.    NEED TO PROTECT THE PUBLIC

According to a recent study by the United States Sentencing Commission,[16] firearms offenders recidivated at a higher rate than non-firearms offenders. This study also found:

- "Over two-thirds (68.1%) of firearms offenders were rearrested for a new crime during the eight-year follow-up period compared to less than half of non-firearms offenders (46.3%)."[17]

---

[16] *See* U.S. Sentencing Commission, *Recidivism Among Federal Firearms Offenders* (June 2019) available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf

[17] *Id*. at p. 4.

`

- "Firearms offenders recidivated more quickly than non-firearms offenders. Of the firearms offenders who recidivated, the median time from release to the first recidivism event was 17 months. Comparatively, the median time from release to the first recidivism event for non-firearms offenders was 22 months."[18]

- "A greater percentage of firearms offenders were rearrested for serious crimes than non-firearms offenders. Of the firearms offenders who recidivated, assault was the most serious new charge for 29.0 percent, followed by drug trafficking (13.5%) and public order crimes (12.6%). Of the non-firearms offenders who recidivated, assault was the most common new charge for 21.9 percent, followed by public order crimes (19.4%) and drug trafficking (11.1%)."[19]

- "Firearms offenders have higher recidivism rates than non-firearms offenders in every Criminal History Category. The difference in recidivism rates between firearms and non-firearms offenders is most pronounced in Criminal History Category I, the lowest Criminal History Category, where firearms offenders recidivated at a rate approximately 12 percentage points higher than non-firearms offenders (45.0% compared to 33.2%)."[20]

- "Firearms offenders appear to desist from criminal activity later in life than non-firearms offenders—firearms offenders continued to recidivate at a high rate until reaching age 50 at the time of release from prison. Even after age 50, firearms offenders recidivated at nearly double the rate of non-firearms offenders in the same age group."[21]

Consistent with the above, in February 2022, the United States Sentencing Commission released a report for another study that examined recidivism among federal violent offenders released in 2010. Its findings are consistent with previous studies on this topic: Violent offenders recidivated at a higher rate than non-violent offenders. Over an eight-year follow-up period, nearly two-thirds (63.8%) of violent offenders released in

---

[18] *Id*.

[19] *Id*.

[20] *Id*.

[21] *Id*. at p. 48.

`

2010 were rearrested, compared to more than one-third (38.4%) of non-violent offenders.[22] And violent offenders recidivated more quickly than non-violent offenders. The median time to rearrest was 16 months for violent offenders versus 22 months for non-violent offenders.[23]

## VIII.  SENTENCE RECOMMENDATION

This is Defendant's 4th known conviction. The Defendant's prior arrest, federal firearms and drug trafficking convictions and subsequent supervised release term did not serve as a deterrent to deter him from possessing a 22-round extended capacity pistol magazine loaded with 17 rounds of ammunition while knowing he was a prohibited person.

For the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the United States recommends that this Court (i) sentence Defendant to **an upward variant sentence of imprisonment of *120 months* imprisonment**, consecutive to any other sentence imposed on Defendant; and (ii) impose a supervised release term of *three years*.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this July 27, 2024.

W. Stephen Muldrow
United States Attorney

---

[22] U.S. Sent. Comm'n, Recidivism Among Federal Violent Offenders Released in 2010 (Feb. 2022), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220210_Recidivism-Violence.pdf.

[23] U.S. Sent. Comm'n, Recidivism Among Federal Violent Offenders Released in 2010 (Feb. 2022), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220210_Recidivism-Violence.pdf.

`

*s/Luis Rivera-Mendez*
Luis Rivera-Mendez
Special Assistant United States Attorney
U.S.D.C./PR Bar 300709
350 Carlos Chardón Ave., Suite 1201
San Juan, PR 00918
Tel. (787) 766-5656
Email: luis.rivera.mendez@usdoj.gov

`

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<em><u>s/Luis Rivera-Mendez</u></em><br>
Luis Rivera-Mendez<br>
Special Assistant United States Attorney